**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| KIM RIEUX, Individually and as Representative of a Class of Participants and Beneficiaries on Behalf of the Ochsner Clinic Foundation Employee Welfare Benefit Plan,<br><br>*Plaintiff*,<br><br>v.<br><br>OCHSNER CLINIC FOUNDATION and DOES 1–20,<br><br>Defendants. | CLASS ACTION COMPLAINT<br><br>Case No.: ___________________ |

## CLASS ACTION COMPLAINT

Plaintiff Kim Rieux ("Plaintiff"), individually and on behalf of the Class of participants and beneficiaries in the Ochsner Clinic Foundation Employee Welfare Benefit Plan (the "Plan"), as defined below, alleges the following against Ochsner Clinic Foundation ("Ochsner") and Does 1 through 20 (the "Doe Defendants," and together with Ochsner, "Defendants"), based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel, Plan documents and enrollment materials obtained by counsel, and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for entities like Ochsner to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products without making available a reasonable alternative standard to avoid those surcharges.

2. This lawsuit challenges Ochsner's practice of charging a "tobacco surcharge" under the Plan in a manner that violates the Employee Retirement Income Security Act of 1974 ("ERISA"), the Public Health Service Act ("PHSA"), and their implementing regulations. ERISA

permits health-contingent wellness programs that promote health if, and only if, such programs strictly comply with the criteria governing those programs, including: (i) offering a meaningful and accessible reasonable alternative standard to any individual being charged extra based on a health factor; (ii) clearly disclosing the availability of that alternative standard in "all plan materials" describing the surcharge, along with a statement that the recommendations of a participant's personal physician will be accommodated; (iii) making available the "full reward" to all participants who satisfy the reasonable alternative standard; and (iv) providing participants with the opportunity to qualify for the reward at least once per year. *See* 29 U.S.C. § 1182; 42 U.S.C. § 300gg-4(j); 29 C.F.R. § 2590.702(f). Ochsner satisfies none of these requirements.

3. Since at least 2020, Plaintiff was required to pay tobacco surcharge penalties in order to maintain health insurance coverage under the Ochsner-sponsored health plan. The surcharge—currently $25.00 per pay period, approximately $650 per year—imposed and continues to impose a financial burden on Plaintiff and other similarly situated employees.

4. Tobacco surcharges have proliferated in recent years. But to be lawful, a plan that imposes one must make available a compliant "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers must adhere to the strict rules set forth in ERISA and the PHSA and in the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") more than ten years ago, effective in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or

safe harbor. Employers can invoke that safe harbor only if they can demonstrate full compliance with all of its requirements.

5. Ochsner's tobacco surcharge program fails to comply with the terms of ERISA and the PHSA and their implementing regulations. Ochsner therefore cannot take advantage of the statutes' safe harbors, 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(b)(2)(B). These tobacco surcharges are discriminatory, health-based surcharges in violation of the law and in violation of the ERISA fiduciary duties owed to Plan participants and beneficiaries.

6. ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, rather than operate as "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that, for a plan to be compliant, an employer must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard; plans must also provide proper notice to all participants. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Ochsner's Plan imposes a tobacco surcharge—currently $25.00 per pay period, approximately $650 per year—on every participant who is designated a tobacco user and enrolls in Plan medical coverage, a penalty assessed solely on the basis of a health factor. The only avenue of escape Ochsner has ever disclosed is a rate-sheet footnote permitting a participant to "submit a certificate of completion for a smoking cessation program within 90 days of the benefit effective date." Ochsner does not make available, and does not tell participants about, a compliant alternative standard.

---

[1] Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "Final Regulations").

7. The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result from cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs, by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

8. ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health-status-related factor, including nicotine or tobacco use, unless that fee is part of a bona fide "wellness program." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

9. To qualify as a bona fide wellness program under ERISA, a company must offer a clearly defined "reasonable alternative standard"—an alternative way for "all similarly situated individuals" to obtain the reward (or avoid the penalty) if they are unable to meet the initial wellness program standard (*i.e.*, being tobacco-free)—by which a participant can receive the program's "full reward," that is, avoid the surcharge for the entire plan year (not just prospectively

---

[2] *Horwitz, J. R., Kelly, B. D., & DiNardo, J. E.* (2013). Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers. *Health Affairs*, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). Tobacco surcharges associated with reduced ACA marketplace enrollment. *Health Affairs*, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

once the reasonable alternative standard has been completed). 42 U.S.C. § 300gg-4(j). Critically, the implementing regulations require that "the same, full reward" be provided to individuals who complete the alternative standard, regardless of when during the plan year they do so.[3] The Departments made this requirement clear when they stated that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount*** of any reward or incentive . . . ." Final Regulations, 33160 (emphasis added). Participants may not be forced to rush through the program under the threat of continued surcharges, and every individual participating in the program must receive the same reward as is provided to non-smokers.

10. Moreover, to be a bona fide wellness program, a company must also provide notice that such a reasonable alternative exists for nicotine or tobacco users in every Plan communication discussing the premium differential, including contact information and a statement that the recommendations of participants' physicians will be accommodated. 42 U.S.C. § 300gg-4(j).

11. Ochsner violates ERISA's wellness program regulations by failing to provide the notice required by statute and regulation, which is an independent basis for liability. Federal law requires that a plan "disclose in ***all plan materials*** describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added); 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v). At present, and over the last six (6) or more years, Ochsner's participant-facing materials—its rate sheets, its recruiting and

[3] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, ***the plan or issuer must provide the premium discounts for January, February, and March to that individual***.)" (emphasis added)).

enrollment "Benefits Highlights," its annual Benefits Guides, and a rate addendum Ochsner itself captions an addendum to the Plan's summary plan description—describe the tobacco surcharge and the higher premium contributions imposed on tobacco users, but do not disclose a compliant alternative avenue that provides all similarly situated individuals with the full reward. Specifically, nowhere in those materials does Ochsner disclose: (i) the existence of any reasonable alternative standard available to a tobacco user after the first ninety days of coverage; (ii) the availability of the "full reward" (*i.e.*, a refund of the surcharge for the plan year) to participants who satisfy an alternative standard; (iii) the regulatory requirement that the recommendations of the participant's personal physician will be accommodated; or (iv) any contact information through which a participant can request or pursue an alternative standard, as distinct from Ochsner's generic human-resources contact information. The governing plan documents in counsel's possession, meanwhile, do not even mention the tobacco surcharge. This is not a minor technical failure. It is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that all participants have a fair and compliant opportunity to be treated the same as non-tobacco users.

12. At no time during the Class Period has the Plan provided the required reasonable alternative standard. Even if it had, Ochsner has failed to adequately notify employees in all plan communications about the availability of such an alternative that would enable employees to avoid the surcharge for the entire year. Consequently, Ochsner's tobacco surcharge violates ERISA's anti-discrimination provisions by imposing additional costs on employees who use tobacco products without meeting the legal requirements for a bona fide wellness program.

13. Ochsner's conduct is unlawful for at least four independent reasons. *First*, Ochsner charges a premium differential based on a health factor without satisfying the wellness-program exception. *Second*, Ochsner fails to provide the notice required by 42 U.S.C. § 300gg-4(j)(3)(E)

and 29 C.F.R. § 2590.702(f)(4)(v) in the plan materials describing the surcharge. *Third*, Ochsner's own disclosures confine the only avenue for removing the surcharge to a ninety-day window following the benefit effective date; provide that a participant "[p]reviously listed as smoker" is simply "[a]ssigned [the] tobacco-user rate" the following year; and provide that benefit elections "remain in effect through the end of the year" absent a qualifying life event, of which ceasing tobacco use is not one. That is a facial violation of the regulatory requirements that participants have a meaningful opportunity to qualify for the reward at least once per year and that the "full reward" be available to all similarly situated individuals, because the surcharge is locked in for the balance of the plan year regardless of any cessation effort. *Fourth*, on information and belief, Ochsner used the surcharge as a self-funding mechanism: because the OchPlus medical options are self-funded, every dollar of surcharge collected from participants reduced Ochsner's own contribution obligation dollar-for-dollar, in breach of Ochsner's fiduciary duty of loyalty under ERISA § 404(a)(1)(A).

14. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 704 (2025) (reaffirming the statute "place[s] on ERISA defendants the burden of proving [an] exemption's applicability.").

15. Because Ochsner failed to comply with all the statutory and regulatory criteria needed to take advantage of ERISA's safe harbor, the nicotine / tobacco surcharge violates ERISA's anti-discrimination requirements. Its collection by Ochsner was, and remains, unlawful.

16. Ochsner also breached its fiduciary duties under ERISA by collecting and retaining tobacco surcharge payments from participants in a manner inconsistent with governing law and, on information and belief, using those funds to offset its own Plan-related contributions. Rather than holding participant contributions for the exclusive benefit of the Plan, Ochsner, on information and belief, commingled surcharge payments with its general assets, allowing those amounts to reduce its own financial obligations while participants were denied the full reward required by law. This misuse of participant-funded surcharges constitutes a breach of the duties of loyalty and prudence and gives rise to equitable relief, including disgorgement of any profits or financial benefits derived from Ochsner's unlawful conduct.

17. Charging participants a tobacco surcharge while not informing them of a reasonable alternative standard that makes available the "full reward," and failing to provide proper notice, makes the surcharge facially noncompliant. No amount of post hoc justification can cure these fundamental defects. Barriers and restrictions of this kind—a ninety-day deadline, a certificate the participant must obtain on her own, a designation that carries forward by default, and silence as to any refund—limit engagement with the program, deter participants from making the effort to improve their health, and prevent employers from taking advantage of the statutory safe harbor. Ochsner's program is not a "program[] of health promotion or disease prevention" as ERISA requires, but an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

18. Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover the unlawfully charged tobacco surcharges and to obtain plan-wide equitable relief to prevent Ochsner from continuing to collect these improper fees in violation of ERISA. Under 29 U.S.C. §§ 1109 and 1132(a)(2), Ochsner, as a fiduciary of

the Plan, has a legal obligation to act in the best interests of its participants and to comply with federal law. Plaintiff, on behalf of herself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Ochsner's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

19. Plaintiff Kim Rieux is an individual citizen of the State of Louisiana, residing in New Orleans, Louisiana. Ms. Rieux was an employee of Ochsner from September 2020 through September 2025, working in the greater New Orleans area, and was a participant in the Plan who paid the tobacco surcharge, which was taken directly from her paycheck each pay period, including during the Class Period (November 21, 2020, to the date of judgment).

20. Plaintiff was a participant in the Plan pursuant to 29 U.S.C. § 1002(7) during the Class Period.

21. Ochsner is the largest health system in Louisiana and one of the largest nonprofit academic health systems in the Gulf South, operating dozens of hospitals and hundreds of clinics and employing tens of thousands of people. Its principal place of business is at 1514 Jefferson Highway, New Orleans, Louisiana 70121.

22. At all times relevant to this lawsuit, Ochsner sponsored, maintained, and managed the Plan, a welfare benefit plan providing medical and other benefits to Ochsner employees and their dependents. On information and belief, the Plan's principal medical benefit options (the OchPlus plans) are self-funded, meaning benefits are paid from participant contributions and Ochsner's assets rather than through insurance, with Blue Cross and Blue Shield of Louisiana serving as claims administrator.

23. On information and belief, at all times relevant to this lawsuit, Ochsner served as the Plan Administrator and named fiduciary of the Plan and exercised discretionary authority and control respecting the Plan and the tobacco surcharge program. Defendants Does 1 through 20 are the Plan's presently unknown fiduciaries and/or unknown fiduciary committees and their members, who exercised discretionary authority or control over the Plan and the tobacco surcharge program, whether through a formal committee or otherwise. Their identities are presently unknown to Plaintiff. Plaintiff will amend this complaint to name the Doe Defendants upon receipt of the Plan's response to Plaintiff's request under ERISA § 104(b)(4) or through discovery.

24. On information and belief, the Plan covers tens of thousands of participants; Ochsner publicly reports a workforce of more than 35,000 employees.

25. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION, VENUE, & EXHAUSTION

26. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute.

27. This Court has personal jurisdiction over Defendants because Ochsner is headquartered in this District and administers the Plan in this District, because, on information and belief, the Doe Defendants administered the Plan in this District, and because Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff and the Class in the State of Louisiana.

28. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because this is the District in which Ochsner has its principal place of business, where the Plan is administered, where

Plaintiff resides and worked for Ochsner, and where a substantial portion of the statutory breach took place.

29. The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the Plan.

30. Plaintiff's claims arise from statutory violations and fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts.

31. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims for benefits have been denied, not where a participant or beneficiary brings suit on behalf of a Plan for statutory violations and breaches of fiduciary duty.

32. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation, such as a requirement to exhaust administrative remedies, does not, by itself, bind the Plan.

33. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. The usual policy justifications for exhausting administrative remedies include allowing the Plan administrator to make an initial determination of the facts, allowing for judicial review and (where appropriate) deference. Those justifications do not exist here because courts will not defer to a Plan administrator's legal analysis and interpretation. Nor, on information and belief, does any arbitration agreement bar this action: the Plan's governing benefit plan documents in counsel's possession contain no arbitration provision.

## BACKGROUND

### I. ERISA'S PROHIBITION ON PREMIUM DISCRIMINATION AND THE NARROW WELLNESS PROGRAM EXCEPTION.

34. As a baseline rule, ERISA and the PHSA prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health status-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

35. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B) (emphasis added)); however, these "wellness programs" must strictly adhere to the mandated regulatory requirements to qualify for this statutory safe-harbor exception.

36. Under ERISA § 505, 29 U.S.C. § 1135, Congress instructed the Departments to issue regulations operationalizing the prohibition against discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182, and PHSA § 2705, 42 U.S.C. § 300gg-4. This authority empowers the Departments to "prescribe such regulations as [they] find[] necessary or appropriate to carry out the provisions of" Title I of ERISA. 29 U.S.C. § 1135. Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Departments' authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

37. In 2006, the Departments issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Congress incorporated those regulations into the PHSA in 2010 and, therefore, the Departments published the Final Regulations to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159; *see also* 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4). These Final Regulations were approved and signed in 2013 to be effective January 1, 2014. Final Regulations, 33158.

38. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (*e.g.,* smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies all the necessary regulatory criteria. *See Cunningham v. Cornell Univ., supra.*

39. Compliance with the regulatory criteria is not optional. These criteria are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention . . . that ***must be satisfied*** in order

for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

40. Only by satisfying all of the regulatory criteria can employers ensure their plans are wellness programs and "not a subterfuge for underwriting or reducing benefits based on health status." *Id*. As one court concluded, regarding an employer's obligation to satisfy the regulatory criteria in a tobacco surcharge case: "[a]ll means all … no matter how small the requirement may be." *Chirinian v. Travelers Cos*., No. 24-cv-3956, 2025 U.S. Dist. LEXIS 144669, at *28 (D. Minn. July 29, 2025). A court in this Circuit recently agreed, denying dismissal of materially identical claims: ERISA's anti-discrimination rules "prohibit [employers] from imposing a tobacco surcharge, unless 'all of the [regulatory] requirements' of [the] outcome-based wellness program are 'satisfied.'" *Wilson v. Whole Food Mkt., Inc*., No. 1:25-CV-00085-DAE, 2026 U.S. Dist. LEXIS 10099, at *13 (W.D. Tex. Jan. 20, 2026) (quoting 29 C.F.R. § 2590.702(f)(4)).

41. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) Reasonable design: Programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is

reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . .” § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: “The full reward under the outcome-based wellness program must be available to all similarly situated individuals.” 29 C.F.R. § 2590.702(f)(4)(iv). This includes a requirement that “the program allows a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual who does not meet the initial standard….” *Id.*

(e) Notice requirement: “The plan must disclose in all plan materials describing the terms of the program the availability of other means of qualifying for the [full] reward.” Final Regulations, 33159 (emphasis added).

42. For health-contingent wellness programs, the statute and Final Regulations require the notice be disclosed “in ***all*** plan materials describing the terms of” the program. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4) (emphasis added). Plans that describe surcharges in enrollment materials without including the required notice violate this rule and fail to qualify for the statutory safe harbor. The notice requirement states:

> **Notice of availability of reasonable alternative standard**. The plan or issuer ***must*** disclose in ***all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, ***the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an***

> ***individual's personal physician will be accommodated***. If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required. Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

29 C.F.R. § 2590.702(f)(4)(v) (emphases added).

43. The Departments explained that documents that merely "mention" a program, without describing its terms, need not include the notice. However, any plan materials that reference a premium differential based on tobacco use or other health-contingent standard must contain the required disclosure. Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure."). Thus, enrollment materials or benefit guides that reference higher premiums or surcharges based on tobacco use, but omit the required disclosure notice regarding a reasonable alternative standard, including omitting contact information and a statement that a participant's physician's recommendations will be accommodated, violate this rule.

44. These requirements prevent employers from including these disclosures in some plan materials while omitting them from other materials actually distributed to participants. Employers that include misleading and varying notices, and omit the required disclosures altogether from most plan communications, run directly contrary to the Departments' guidance and fail to provide the notice necessary to make informed enrollment decisions.

45. Ochsner imposes a premium differential without providing the required notice disclosures in the participant-facing communications sent to participants.

## II. OCHSNER'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE.

46. On its face, the Ochsner tobacco surcharge violates ERISA because Ochsner fails to comply with the statutory and regulatory notice requirements.

47. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health-status related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

48. Ochsner's tobacco surcharge violates this provision. Plaintiff, and all others similarly situated, were required to pay an additional premium or contribution per year based on a "health status-related factor"—their use of tobacco products. *See Mueller v. United Surgical Partners Int'l, Inc.*, No. 3:25-CV-2934-S, 2026 U.S. Dist. LEXIS 164466, at *13-14 (N.D. Tex. July 23, 2026) (tobacco use is a health status-related factor under ERISA). Plaintiff, and all others similarly situated, were forced to pay the tobacco surcharge to remain insured under the Plan.

49. Specifically, Ochsner imposes an unlawful tobacco surcharge on Plan participants who are designated as tobacco users, whether by a positive new-hire drug screen, a yes answer on an enrollment questionnaire, or carry-forward of a prior-year designation.

50. All benefits-eligible employees enrolled in Ochsner medical coverage who are designated tobacco users pay higher rates under the Plan: Ochsner publishes two separate rate schedules, called the "Tobacco-Free Rates" and "Tobacco User Rates," for every OchPlus medical option and coverage tier.

51. Ochsner sometimes refers to the differential as the "Tobacco User Rates," sometimes as a "Tobacco fee," and sometimes as a "Tobacco User Fee." On information and belief, there is no substantive distinction among these terms.

52. Under the Plan, a participant's tobacco status is set in three ways. At hire, Ochsner's onboarding materials state that an employee will pay the "Tobacco rate if your new hire drug screen tests positive for tobacco use", *i.e.,* a chemical nicotine screen. At annual enrollment, employees complete a tobacco-use questionnaire. And a prior designation carries forward by default: "Previously listed as smoker: Assigned tobacco-user rate." The current differential is a "Tobacco User Fee of $25 per pay period"—approximately $650 per year—included in the medical premium of each designated employee. In earlier plan years the differential ranged from $5.00 to $24.00 per pay period depending on the medical option.

53. Ochsner's recruiting and enrollment materials for the 2022 through 2024 plan years describe the medical plans and premiums without disclosing the tobacco surcharge at all. On information and belief, the surcharge continued to be assessed. No Ochsner material discloses any means of removing the surcharge after the first ninety (90) days of coverage.

54. The surcharge is also concealed in participants' pay. The surcharge is combined with the employee's ordinary medical premium in a single payroll deduction: a surcharged employee's pay stub shows only a single, generic "Health" deduction, without identifying any portion of it as a tobacco surcharge.

55. Ochsner's program conditions the price of health coverage on chemical testing and the disclosure of health status: a new hire whose drug screen returns a positive nicotine result is automatically assigned the tobacco-user rate, and a participant once designated a tobacco user retains that designation, and the higher rate, by default in later years.

56. The designation controls the surcharge for the entire plan year and beyond. The only avoidance path disclosed by the Ochsner material is submitting a "completed certification for a smoking cessation program within 90 days of [the] benefit effective date." A participant who

completes a cessation program after that ninety-day window has no disclosed means of removing the surcharge, in that plan year or any later one, and no Ochsner document has ever disclosed a refund of surcharges already paid. Ochsner's Benefits Guides reinforce the lock-in. They instruct participants that "[y]our benefit elections remain in effect through the end of the year unless you have a qualifying life event," and the qualifying life events they list—birth, adoption, death, marriage, divorce, gain or loss of other coverage, and changes in employment status—do not include ceasing to use tobacco. And they instruct that a participant "[p]reviously listed as smoker" is simply "[a]ssigned [the] tobacco-user rate." Ochsner's own description of the surcharge is therefore a door that closes ninety days into coverage: after that, a participant who is charged the surcharge is told, on the face of Ochsner's enrollment materials, that there is no path to avoid it for the balance of the year, and that her designation will carry forward by default into the next.

57. Under this tobacco surcharge program, Plaintiff has paid surcharged premiums to Ochsner in order to maintain health insurance, something she could not go without. Plaintiff's 2025 medical deduction of $76.00 per bi-weekly pay period for employee-only OchPlus 1 coverage corresponds to Ochsner's published "Tobacco User" rate, which is $25.00 per pay period more than the published tobacco-free rate for identical coverage.

58. Rather than cure these defects, Ochsner has deepened them: between the 2023 and 2026 plan years the tobacco differential for the flagship OchPlus 1 option nearly doubled, from $13.00 to $25.00 per pay period, while Ochsner's participant-facing recruiting materials stopped mentioning the surcharge altogether. At no time has Ochsner disclosed a retroactive refund, a mid-year cure, a waiver, or a physician-accommodation alternative.

59. The Plan documents in Plaintiff's counsel's possession likewise lack compliant disclosures. The 2023 benefit plan documents for the OchPlus medical options identify themselves

as the governing plan documents for the Ochsner Clinic Foundation Employee Welfare Benefit Plan. While those documents describe tobacco-use screening and counseling as covered preventive benefits, they nowhere disclose the surcharge, the two-tier rate structure, or any alternative standard. The Plan's summaries of benefits and coverage for the 2022 and 2026 plan years for every OchPlus option are likewise silent on the surcharge. On information and belief, the Plan's remaining governing documents are no different. The surcharge is mentioned solely in enrollment materials, recruiting highlights, and rate sheets. *See Mueller*, 2026 U.S. Dist. LEXIS 164466, at *19-20 (a plan's summary plan descriptions must describe the wellness program and contain the required disclosure).[4]

60. Ochsner's own rate sheets underscore the point. The 2023 rate addendum in Plaintiff's possession, which sets out the "Tobacco-Free Rates" and "Tobacco User Rates" side by side, is captioned an "Addendum to the Ochsner Health & Welfare Benefits Summary Plan Description (SPD)," and Ochsner's 2026 Benefits Guide tells participants that "[i]f there is any discrepancy between this guide and the Summary Plan Description (SPD), the SPD will preside." Thus, to the extent any Ochsner document functioning as a summary plan description describes the premium differential at all, it does so only through a rate table and a footnote, and contains none of the disclosures that 29 C.F.R. § 2590.702(f)(4)(v) requires in all plan materials describing the terms of the program. *See* Final Regulations, 33166.

61. The varying descriptions of the surcharge across Ochsner's materials—shifting amounts, shifting labels, years in which the surcharge disappears from participant-facing materials

[4] Plaintiff's counsel has submitted a request for the Plan's governing documents under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and is awaiting those materials. Plaintiff will amend this complaint, if necessary, upon their receipt.

entirely, and a payroll deduction that does not identify the surcharge at all—cause confusion and lead to Plan participants being unable to make informed decisions.

62. During the Class Period, Ochsner controlled the tobacco surcharge by determining which participants were designated tobacco users and by withholding the surcharge from participants' paychecks. On information and belief, rather than placing these funds in a trust account, Ochsner retained the amounts collected as part of its own assets and used them to offset the cost of funding its self-funded medical options (although discovery is needed to confirm).

63. The Plan therefore charges tobacco users higher premiums than similarly situated participants who do not use tobacco, and fails to meet the safe harbor exception.

## III. OCHSNER CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS.

### A. Lack of Reasonable Alternative Standard.

64. Ochsner failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard: in this case, not being designated a tobacco user by drug screen, questionnaire, or carry-forward.

65. The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the full reward once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year, including retroactively once they complete the tobacco cessation program. *See Wilson*, 2026 U.S. Dist. LEXIS 10099, at *24 ("[T]o make available the 'full reward' to 'all

similarly situated individuals,' a wellness program must provide retroactive reimbursements of all tobacco surcharges paid that Plan year.").

66. ERISA offers a limited exception to its general rules forbidding discrimination based on health status, by providing safe harbor for certain bona fide wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B).

67. This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer programs designed to improve the participant's well-being such as a smoking cessation program. The regulations covering health-contingent wellness programs require that the wellness programs, like smoking cessation programs, satisfy certain criteria. *See* 78 Fed. Reg. 33158, 33159.

68. A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include.

69. To qualify under ERISA, wellness programs must meet certain basic requirements: First, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods. Second, everyone in a similar situation must have a chance to earn the "full reward." In other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard. Third, the program must be disclosed "***in all plan materials***" describing the reward and explaining the availability of a reasonable alternative

standard or waiver, and must also provide the ability to request an accommodation to the standard through one's personal physician. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

70. These regulations "set forth criteria for an affirmative defense that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *See* Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33160 (June 3, 2013).

71. Crucially, every one of the safe harbor requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

72. Ochsner's tobacco surcharge program has never satisfied the requirement to provide a reasonable alternative standard through which a participant could obtain the full reward, and has never satisfied the requirement to provide compliant notice of a reasonable alternative standard. As a result, it cannot meet the elements of this affirmative defense.

73. Ochsner's enrollment and recruiting materials do not disclose any alternative standard in the required terms. The only avoidance language in any Ochsner document is a footnote permitting a cessation-program certification within ninety days of the benefit effective date; no material states that an alternative standard is available to every tobacco user at any time, none discloses the possibility of waiver, and none contains the required physician-accommodation statement.

74. The ninety-day window is itself illusory for most of the Class: a participant designated by questionnaire or carry-forward at annual enrollment is given no new window, and the 2022 through 2024 recruiting materials did not disclose the surcharge, let alone the opportunity to avoid the surcharge, at all.

75. Critically, no Ochsner material has ever notified employees that participating in any program would relieve them of the tobacco surcharge for the full plan year (either retroactively or prospectively). The cessation certification, where disclosed at all, is presented only as a forward-looking rate adjustment.

76. These conditioned, footnote-only references are therefore not a "reasonable alternative standard" disclosure under the controlling statutes and regulations.

77. The guides are objectively insufficient to explain the process by which employees and their covered family members can avoid or remove the tobacco surcharge.

78. Ochsner is fully capable of administering program-based relief from the tobacco surcharge. Yet Ochsner confines that relief to a single ninety-day window, discloses it only in rate-sheet footnotes, and has never provided the required notice, including the physician-accommodation statement, in any participant communication.

79. Participants designated as tobacco users could not avoid or recover the surcharge once the ninety-day window passed: the surcharge was charged for the entire plan year (and carried forward into later years by default), and no Ochsner document has ever disclosed any refund or mid-year cure. This practice violates ERISA's requirements that eligible participants must receive the "full reward."

80. Ochsner likewise fails to provide a meaningful opportunity to qualify for the full reward at least once per year. The statute and Final Regulations require that "[t]he full reward . . . be available to all similarly situated individuals," and that individuals be given the opportunity to "qualify for the reward under the program at least once per year." 42 U.S.C. § 300gg-4(j)(3)(C); 29 C.F.R. § 2590.702(f)(4)(i). These are independent requirements: the once-per-year opportunity must be a meaningful opportunity to obtain the full reward for the relevant plan year—not a ninety-

day deadline at the start of coverage after which the designation is fixed, and not merely an opportunity to re-answer a questionnaire at the next open enrollment. Ochsner's design—a ninety-day window, a carry-forward default, and elections that "remain in effect through the end of the year"—treats the first ninety days of coverage as the only opportunity for tobacco-free pricing, and even then only prospectively. That design forfeits the safe harbor.

81. Ochsner, during the Class Period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue to be required to pay the surcharge. On information and belief, Ochsner withholds the amount of the surcharge from participants' paychecks and deposits these funds into Ochsner's own accounts, rather than into a trust account (although discovery is needed to confirm).

82. By depositing these ill-gotten gains into its own accounts, Ochsner has dealt with assets of the Plan for its own interests, in violation of ERISA. Ochsner has a fiduciary responsibility to ensure that these funds are used to support coverage for employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Ochsner has increased Ochsner's own bottom line, allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

83. Ochsner's failure to adequately disclose this information in all Plan materials deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard. Accordingly, the tobacco surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

84. Plaintiff did not complete a tobacco cessation program because she was not adequately notified of any such program as a means of avoiding the surcharge for the full plan year. Had a compliant program been offered and disclosed, Plaintiff would have enrolled in and completed it. Even if Plaintiff had received the necessary compliant notifications of the reasonable alternative standard (which she did not), she would not have received the full reward of being reimbursed the full tobacco surcharge for the entire Plan year as the regulations require.

85. At all times during the Class Period, the Plan failed to provide a compliant reasonable alternative standard that allows participants to receive the "full reward," *i.e.*, avoiding the surcharge for the entire plan year. Ochsner's purported wellness program thus failed to provide any reasonable alternative standards and failed to comply with the requirement to make available the "full reward" to participants.

86. On this basis alone, the Plan violates ERISA's anti-discrimination provisions.

**B. Lack of Notice of Reasonable Alternative Standard.**

87. ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in all plan materials. The Ochsner plan documents and participant materials in Plaintiff's and her counsel's possession fail to communicate this option in the required terms. This is in violation of ERISA's notification requirements. No such material contains the required waiver statement or physician-accommodation statement.

88. The regulations require plans and issuers to "disclose ***in all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable

alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v) (emphasis added); *see also* 42 U.S.C. § 300gg-4(j)(3)(E).

89. Ochsner does not include adequate notification in any Plan materials. As discussed above, the enrollment and recruiting materials that describe the surcharge have never notified participants of the availability of a reasonable alternative standard that would eliminate the tobacco surcharge for the entire plan year, in violation of ERISA, and have never stated that the reasonable alternative standard can be met through accommodation of a personal physician recommendation.

90. Instead, the only disclosed path, where disclosed at all, was a cessation-program certification within ninety days of the benefit effective date, operating prospectively only; and in the 2022 through 2024 plan years the recruiting materials disclosed no path, and no surcharge, at all.

91. At no time have Plan materials informed employees that completing a program would entitle them to the full reward of avoiding the surcharge for the entire year, which discourages participation and violates ERISA's requirement that participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards.

92. Moreover, no Plan material provides any information that those standards may be waived or avoided by providing a personal physician recommendation.

93. Additionally, the regulations provide sample language for the notice a lawful wellness program must give. 29 C.F.R. § 2590.702(f)(6). Paragraph (f)(6) states:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn

> the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

29 C.F.R. § 2590.702(f)(6).

94. Much of this language, including the ability to "earn the same reward by different means" and the fact that the Plan will "work with you . . . [and] with your doctor," is missing from the Plan's materials distributed to the Plan's participants.

95. "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158, 33166.

96. None of the Plan documents or participant materials provided to Plaintiff, or obtained by her counsel, in hardcopy or electronic form has ever disclosed a means by which a participant could receive the "full reward" for the tobacco surcharge for the entire Plan year, and on information and belief the same is true of the materials provided to the Class. None supplies any manner to waive the surcharge, including based on recommendations from an individual's personal physician. Nor do they present specific contact information for the person or persons who can assist with determining the availability of any reasonable alternative beyond the ninety-day cessation certification itself.

97. As a result, the Plan materials do not provide the notice of the scope and nature of any tobacco surcharge program that the wellness-program safe harbor requires be made available to employees.

98. The Final Regulations provide a stark comparator to Ochsner's footnote in Example 6 under 29 C.F.R. § 2590.702(f)(4)(vi), which describes a group health plan offering a hypothetical, compliant tobacco surcharge program:

> In conjunction with an annual open enrollment period, a group health plan provides a premium differential based on tobacco use, determined using a health risk assessment. The following statement is included in all plan materials describing the tobacco premium differential: "Stop smoking today! We can help! If you are a smoker, we offer a smoking cessation program. If you complete the program, you can avoid this surcharge." The plan accommodates participants who smoke by facilitating their enrollment in a smoking cessation program that requires participation at a time and place that are not unreasonably burdensome or impractical for participants, and that is otherwise reasonably designed based on all the relevant facts and circumstances, and discloses contact information and the individual's option to involve his or her personal physician. The plan pays for the cost of participation in the smoking cessation program. Any participant can avoid the surcharge for the plan year by participating in the program, regardless of whether the participant stops smoking, but the plan can require a participant who wants to avoid the surcharge in a subsequent year to complete the smoking cessation program again.

29 C.F.R. § 2590.702(f)(4)(vi), Example 6.

99. The program in Example 6 is reasonably designed under 29 C.F.R. § 2590.702(f)(4)(iii) because the plan provides a reasonable alternative standard (as required under paragraph (f)(4)(iv)) to all tobacco users—a smoking cessation program that the plan identifies, pays for, and facilitates enrollment in, at a time and place that are not unreasonably burdensome or impractical—and because the participant earns the "full reward" by avoiding the surcharge for the plan year through participation in the program, regardless of whether the participant is actually able to quit. The plan in Example 6 also meets the strict notice requirements because it provides, in all materials describing the terms of the program, the availability of the reasonable alternative standard, including contact information and the individual's option to involve his or her personal physician.

100. Ochsner's program is the opposite on every point. Unlike the plan in Example 6, Ochsner does not tell tobacco users "we offer a smoking cessation program"; it tells them to submit a certificate of completion for a program it does not identify. Unlike Example 6, nothing in

Ochsner's materials states that Ochsner facilitates enrollment in, or pays for, any such program. Unlike Example 6, Ochsner's materials do not provide that a participant "can avoid the surcharge for the plan year" by participating; they offer only prospective "eligib[ility]" for tobacco-free rates, and only if the certificate is submitted within ninety days of the benefit effective date. Unlike Example 6, Ochsner's materials tie relief to "[c]hanging to non-smoker status," not to participation regardless of outcome. And unlike Example 6, Ochsner's materials contain no contact information for obtaining an alternative standard and no statement that the Plan will accommodate the recommendations of the participant's personal physician regarding the medical appropriateness of the alternative standard.

101. Had Ochsner structured the program in compliance with ERISA—by making available, and notifying participants of, a compliant reasonable alternative standard—participants would have been aware of the avenues available to avoid the surcharge and the steps needed to do so. Instead, Ochsner failed to make such a program available and failed to tell participants how they could avoid the surcharge for the plan year.

102. Ochsner failed to provide notice, in all Plan communications, of the availability and scope of a reasonable alternative standard, including accommodations recommended by the participant's personal physician, through which participants could avoid the tobacco surcharge and receive a full reward. The tobacco surcharge program is therefore unlawful, and the surcharge assessed to Plaintiff and the Class must be returned for the entire Class Period.

103. Allowing entities like Ochsner to exploit participants and extract substantial sums from them each year without making available a compliant wellness program transforms the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to

manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law. This conduct violates not only ERISA's anti-discrimination rules governing wellness programs but also the statute's fiduciary duties of loyalty and prudence, because Ochsner failed to administer the Plan solely in the interest of participants.

## CLASS ACTION ALLEGATIONS

104. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

105. 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action for statutory violations of ERISA for "appropriate equitable relief."

106. In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan who were subject to the unlawful Ochsner tobacco surcharge. Plaintiff seeks to certify, and to be appointed as a representative of, the following Class:

> All persons in the United States who paid Ochsner's tobacco surcharge or tobacco-user premium differential in connection with the Ochsner Clinic Foundation Employee Welfare Benefit Plan at any time from November 21, 2020, to the date of judgment.

107. Excluded from the Class are the Court and its officers, employees, and relatives; Ochsner and its subsidiaries, officers, and directors; the Doe Defendants; the Plan's fiduciaries; and governmental entities.

108. The Class includes thousands or tens of thousands of members and is so numerous that joinder of all members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

109. There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Ochsner owed fiduciary and other duties to the Plan and its participants and failed to take the actions alleged as to the Plan and as to any individual participant. Common questions of law and fact include, but are not limited to, the following:

a. Whether Ochsner's tobacco surcharge discriminates against Plan participants based on a health status-related factor;

b. Whether Ochsner's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

c. Whether Ochsner can meet every element of its statutory affirmative defense for operating a compliant wellness program;

d. Whether all of the Plan materials describing the tobacco surcharge gave notice of a reasonable alternative standard by which a plan participant may receive the full reward; and

e. Whether Ochsner, in its discretionary fiduciary capacity of managing the Plan, breached its fiduciary duties with respect to the collection and retention of the tobacco surcharge.

110. Plaintiff's claims are typical of the claims of the pertinent class pursuant to Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct by Ochsner—the collection of an unlawful tobacco surcharge—and are based on the same legal theories.

111. Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because she was a participant in the Plan during the Class Period, has no

interests that conflict with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers.

112. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Ochsner concerning the discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan which would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

113. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Ochsner has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

114. Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

**COUNT I**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Provide a Reasonable Alternative Standard Against Ochsner**

115. Plaintiff restates paragraphs 1-114 above as if fully set forth herein.

116. To enroll in the Plan's medical coverage, Plaintiff and Class members designated as tobacco users were required to pay a tobacco surcharge—currently $25.00 per pay period,

approximately $650 per year, with differentials in earlier years ranging from $5.00 to $24.00 per pay period depending on the medical option.

117. Ochsner's tobacco surcharge program is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

a. The Plan did not allow participants a reasonable alternative means to avoid the tobacco surcharge by enrolling in a compliant smoking cessation program. Indeed, completing a cessation program after the first ninety days of coverage did not remove or reduce the surcharge at all, whether prospectively or retroactively;

b. Even a designated tobacco user who quit using tobacco would still have the surcharge deducted from her pay for the entire plan year—and, by carry-forward, into later years—with no disclosed means to stop it and no refund of amounts already paid; and

c. Because a participant could not receive the "full reward," the Plan did not provide for a reasonable alternative standard.

118. Ochsner cannot and did not meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

119. Ochsner, via its tobacco surcharge program, has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and has assessed and continues to assess premiums or contributions, in violation of 29 U.S.C. § 1182(b).

120. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and the Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

121. Plaintiff and the Class members were required to pay an illegal fee, and Ochsner collected that fee from them in violation of the law. Equity requires that those funds be returned.

122. Equity also requires that the Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**COUNT II**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Give Required Notice Against Ochsner**

123. Plaintiff restates paragraphs 1-114 above as if fully set forth herein.

124. To enroll in the Plan's medical coverage, Plaintiff and the Class members designated as tobacco users were required to pay a tobacco surcharge—currently $25.00 per pay period, approximately $650 per year, with differentials in earlier years ranging from $5.00 to $24.00 per pay period depending on the medical option.

125. Ochsner's tobacco surcharge program is not and was not a permissible wellness program, because Ochsner did not offer a reasonable alternative standard, and did not give the statutorily-required notice of the scope and nature of the reasonable alternative standard. None of the Plan documents provided to Plaintiff or the Class members in hardcopy or electronic form supplied a fully compliant means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year or provided a statement that recommendations of an individual's personal physician regarding their tobacco use would be accommodated.

126. Ochsner therefore cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is not entitled to statutory safe harbor protection.

127. Ochsner, via its tobacco surcharge program, has discriminated against and continues to discriminate against Plan participants based on a health status-related factor. It has assessed and continues to assess premiums or contributions in violation of 29 U.S.C. § 1182(b).

128. 29 U.S.C. § 1182(b) is a statutory provision of ERISA that Plaintiff and the Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

129. Plaintiff and the Class members were required to pay an illegal surcharge, and Ochsner collected that fee from them in violation of the law. Equity requires that those funds be returned to Plaintiff and the Class members.

130. Equity also requires that the Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**COUNT III**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Loyalty Against Ochsner and Does 1–20**

131. Plaintiff restates paragraphs 1-114 above as if fully set forth herein.

132. At all times relevant to this lawsuit, Ochsner was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and the Plan's named fiduciary, and was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority and discretionary control respecting management of the Plan and disposition of its assets, including the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Plan. On information and belief, the Doe Defendants, who are the Plan's unknown fiduciaries and/or unknown fiduciary committees and their members, likewise exercised discretionary authority or control respecting management of the Plan or disposition of its assets and were fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A).

133. Ochsner breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of the law, as the receipt of additional funds reduced Ochsner's own costs associated with funding the self-funded Plan options and forestalled its own obligations to make contributions thereto.

134. As a result of the imposition of the tobacco surcharge, Ochsner enriched itself at the expense of the Class Members, thereby providing Ochsner a windfall.

135. Ochsner breached its fiduciary duties under ERISA in that it failed to act solely in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A).

136. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Ochsner is liable to make good to the Plan all losses to the plan resulting from its breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits acquired through the violations alleged herein and which were made through use of assets of the plan, along with such other equitable or remedial relief as is proper.

137. Plaintiff is authorized to bring this action on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2).

**COUNT IV**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Prudence Against Ochsner and Does 1–20**

138. Plaintiff restates paragraphs 1-114 above as if fully set forth herein.

139. ERISA's duty of prudence requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and

with like aims…" 29 U.S.C. § 1104(a)(1)(B). A plaintiff states a prudence claim where the pleaded facts permit a reasonable inference that the fiduciary's process was flawed. *Seidner v. Kimberly-Clark Corp.*, No. 3:21-cv-867-L, 2023 U.S. Dist. LEXIS 54780, at *14 (N.D. Tex. Mar. 30, 2023).

140. Ochsner breached its fiduciary duties by failing to conduct an adequate and thorough investigation regarding the assessment of a tobacco surcharge on Plaintiff and other Plan participants and beneficiaries.

141. Ochsner failed to adequately investigate and assess the strict legal requirements necessary to impose a lawful nicotine / tobacco surcharge under ERISA and the PHSA.

142. These fiduciary violations caused injury to Plaintiff and other Plan participants and beneficiaries who were required to pay unlawful surcharges as a direct result of Ochsner's imprudent and insufficient investigation and analytic process.

143. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Ochsner is liable to make good to the plan all losses to the plan resulting from its breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust all profits acquired through the violations alleged herein and which were made through use of assets of the Plan, and for such other equitable or remedial relief as is proper.

144. Plaintiff is authorized to bring this action on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2).

**COUNT V**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Failure to Monitor Fiduciaries Against Ochsner**

145. Plaintiff restates paragraphs 1-114 above as if fully set forth herein.

146. At all times relevant to this lawsuit, Ochsner, as the Plan's sponsor and named fiduciary, acted through and delegated day-to-day Plan administration to its officers and

employees, retained the authority to remove and replace those persons, and exercised discretionary authority over the selection and retention of the Plan's fiduciaries and service providers. Ochsner was therefore a fiduciary of the Plan with respect to those appointment, delegation, and removal powers within the meaning of 29 U.S.C. § 1002(21)(A).

147. A fiduciary's duty to appoint carries with it a concomitant duty to monitor. Ochsner was obligated to monitor its appointees and delegates at reasonable intervals, in such a manner as may be reasonably expected to ensure that their performance complied with ERISA and the terms of the Plan; to ensure that they possessed and employed processes adequate to administer the Plan lawfully; and to take prompt and effective action to remedy fiduciary deficiencies, including removal and replacement of those persons where necessary.

148. Ochsner breached its duty to monitor by, among other things: (a) failing to monitor its delegates' administration of the tobacco surcharge program, which for years operated without any reasonable alternative standard available after the first ninety days of coverage, without the legally required notices, and without any mechanism to provide participants the full reward; (b) failing to ensure that those responsible for Plan administration employed any process to evaluate the program's compliance with ERISA § 702 and its implementing regulations; (c) failing to have any system in place for reviewing the participant communications that described the surcharge; and (d) failing to remove or remediate fiduciaries and delegates whose administration of the program violated ERISA.

149. Had Ochsner discharged its monitoring duties prudently, it would have discovered that the tobacco surcharge program did not comply with ERISA's anti-discrimination provisions and the wellness-program regulations, and it would have required its delegates to bring the program into compliance or to cease collecting the surcharge.

150. As a direct and proximate result of these monitoring breaches, the Plan and its participants suffered losses, including the unlawful surcharges collected during the Class Period, and Ochsner was unjustly enriched thereby.

151. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Ochsner is liable to make good to the Plan all losses to the plan resulting from its breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits it acquired through its violations alleged herein, along with such other equitable or remedial relief as is proper.

152. Plaintiff is authorized to bring this action on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court enter judgment in her favor, both individually and on behalf of all participants and beneficiaries in the Plan, and award the following relief:

a. certifying a class action for Plaintiff's ERISA claims and appointing Stiegler Law Firm LLC, Chirinos Law Firm PLLC, and Milberg, PLLC as Class counsel;

b. requiring Ochsner to reimburse all participants who paid the tobacco surcharges from November 21, 2020, through the date of judgment plus interest;

c. requiring Ochsner to revise any tobacco surcharge program it intends to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d. enjoining Ochsner from collecting tobacco surcharges until Ochsner revises the tobacco surcharge program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e. imposing a constructive trust on profits received by Ochsner as a result of fiduciary breaches committed by Ochsner or for which it is liable, upon which Plaintiff and members of the Class can make claims for benefits;

f. requiring Ochsner to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed with regard to the tobacco surcharge program for which it is liable;

g. ordering Ochsner to provide all accountings necessary to determine the amounts Ochsner must make good to the Plan and to plan participants and beneficiaries;

h. imposing the equitable remedy of surcharge and requiring Ochsner to return all funds derived from the illegal tobacco surcharge program;

i. removing the fiduciaries who have breached their fiduciary duties and enjoining them from future ERISA violations;

j. awarding Plaintiff's counsel attorneys' fees and costs consistent with ERISA's fee- and cost-shifting provisions for the costs of prosecuting this action;

k. ordering the payment of interest to the extent it is allowed by law; and

l. granting any further relief that the Court may deem just and equitable.

Dated: November 21, 2026

Respectfully submitted,

*<u>/s/ Charles J. Stiegler</u>*
Charles Joseph Stiegler (TA)
La. Bar Roll No. 33456
**STIEGLER LAW FIRM LLC**
318 Harrison Ave., Ste 104
New Orleans, LA 70124-3126
Phone: 504-267-0777 | Fax: 504-513-3084
charles@stieglerlawfirm.com

Tulio D. Chirinos
La. Bar Roll No. 35079
**CHIRINOS LAW FIRM PLLC**
20283 State Road 7, Suite 592
Boca Raton, FL 33498
Telephone: (561) 299-6334
tchirinos@chirinoslawfirm.com

Alexandr Rudenco (*pro hac vice forthcoming*)
**MILBERG, PLLC**
800 S. Gay St., Suite 1100
Knoxville, TN 37929
(865) 247-0080
arudenco@milberg.com

*Counsel for Plaintiff and the Proposed Class*